A05A0720. McKEEHAN v. THE STATE.
(616 SE2d 489)

BARNES, Judge.

Following the denial of his motion for new trial, James L. McKeehan appeals his convictions for rape, aggravated assault, kidnapping with bodily injury, kidnapping, two counts of false imprisonment, and burglary. He contends that the evidence was insufficient, that the statute of limitation had run before his indictment for the crimes, that he was denied his constitutional right to a speedy trial, that the indictment did not contain the necessary language tolling the statute of limitation, and that the trial court erred in sentencing him as a recidivist. Upon review, and finding no error, we affirm.

The standard of review on appeal of a criminal conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citations and punctuation omitted.) *Parks v. State*, 257 Ga. App. 25 (1) (570 SE2d 350) (2002). The appellant no longer enjoys the presumption of innocence, and we determine only the sufficiency of the evidence. *James v. State*, 227 Ga. App. 907, 908 (1) (490 SE2d 556) (1997). We do not weigh the evidence or assess witness credibility. Id.

So viewed, the evidence shows that on March 24, 1995, the 86-year-old victim was sitting in the den of her son's home. Her nine-year-old great-grandson was home with her. The grandson was in the bathroom and heard someone enter the house. When he came out, a man with a bushy beard put a blanket over the boy's head and took him to the master bedroom where he tied the child's hands and feet. The boy heard the intruder demand the victim's purse and heard what sounded like a person being slammed to the floor. When the boy heard the door close, he untied himself and discovered his grandmother lying bound on the den floor. He called for help, and when his grandfather arrived, the victim was lying on the floor with her dress askew, her pantyhose torn, and in obvious distress. The responding police officer testified that the elderly victim could not verbalize the details of the assault, and her mental state made it impossible to get a statement. The victim did, however, ask "why did this happen to me"

and stated that "I didn't do it, he hurt me." The hospital's emergency room doctor examined the victim, and he noted bruising on her left forearm and side, and a tear and blood inside the vaginal cavity. A rape kit was completed on the victim, and a forensic biologist at the Georgia Bureau of Investigation Crime Lab testified that she analyzed the rape kit submitted to her from the swabbings taken from the victim and it tested positive for sperm. Although an extensive investigation ensued, no suspect was ever identified. Two neighbors reported seeing a man similar to the one described by the grandson near the victim's home near the time of the assault, and the police created a composite sketch of the suspect. However, the only physical evidence the police were able to retrieve was the DNA material from the assault kit. The victim died the year after the incident.

In January 2002, the state crime lab issued a report to the county GBI office that a match had been obtained through the use of the Combined DNA Index System, "CODIS," and the DNA retrieved from the victim's assault kit matched that of a state inmate, McKeehan. The police obtained a search warrant and recovered a blood sample from McKeehan, and his DNA, or that of his identical twin, matched that of the DNA obtained from the sperm found in the victim's body.

1. McKeehan first complains that the evidence was insufficient to support his convictions. He testified that he and the victim had a consensual sexual relationship, and denied committing the other crimes. He also argues that he was never positively identified, but was only identified through DNA evidence.

Under OCGA § 24-4-6, only when the evidence is entirely circumstantial must the evidence exclude every other reasonable hypothesis except that of the guilt of the accused. See *Savage v. State*, 229 Ga. App. 560, 563 (494 SE2d 359) (1997). Here, the evidence consisted of a combination of circumstantial and direct evidence, in particular, the DNA evidence, and the great-grandson's testimony regarding the nature of the attack. Although McKeehan complains that he was never positively identified as the perpetrator, several eyewitnesses saw a man fitting his description in the area near the time of the attack, and evidence other than the victim's identification of her attacker, including circumstantial evidence, may sustain a conviction for rape. See *Walker v. State*, 157 Ga. App. 728, 728-730 (1) (278 SE2d 487) (1981). Likewise, any questions regarding the witnesses' reliability go to the credibility of the witnesses' testimony, and the jury decides issues of credibility. *Taylor v. State*, 232 Ga. App. 383, 384-385 (501 SE2d 875) (1998). We conclude that the evidence as outlined above was sufficient for a rational trier of fact to find McKeehan guilty beyond a reasonable doubt of the offenses charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. McKeehan next argues that the trial court erred in overruling his plea in bar seeking dismissal of the indictment due to the running of the statute of limitation.

McKeehan was indicted for rape on July 23, 2003. The indictment alleged that "the crimes do not fall outside the period in which a prosecution against this defendant must be commenced because the defendant named herein was unknown until and after January 2, 2002." McKeehan filed a plea in bar, alleging that the statute of limitation was not "tolled by operation of law or by operation of fact."

McKeehan essentially argues that the State failed to prove that his identity was unknown, and, thus, the statute of limitation began to run on March 24, 1995 and expired prior to his 2003 indictment.

Pretermitting whether the statute of limitation was seven years as alleged by McKeehan or fifteen years under the current statute,[1] pursuant to OCGA § 17-3-1 (c.1) (3) a prosecution for rape "may be commenced at any time when deoxyribonucleic acid (DNA) evidence is used to establish the identity of the accused." "However, unless and until the [DNA] is matched to an actual person, it cannot be said that the police know who committed the crime." *Beasley v. State*, 244 Ga. App. 836, 840 (536 SE2d 825) (2000). Under OCGA § 17-3-2 (2), the period of limitation is tolled during any period in which "[t]he person committing the crime is unknown or the crime is unknown." The key to determining when the statute of limitation begins to run is to find when the offender or offense became known. In so determining, "the knowledge of the victim of the crime is imputed to the State, and thus the crime becomes known to the State and the statute of limitation begins to run after it is known to the prosecutor *or* to the one injured by the offense." (Citations and punctuation omitted.) *Lee v. State*, 211 Ga. App. 112 (438 SE2d 108) (1993). In a criminal case, where an exception is relied upon to prevent the bar of the statute of limitation, it must be alleged and proved. *Moss v. State*, 220 Ga. App. 150 (469 SE2d 325) (1996). Thus, the State was required to prove that the identity of the assailant was unknown during the tolled period, and "statute of limitation questions may properly be submitted to the jury for resolution." *State v. Tuzman*, 145 Ga. App. 481, 483 (2) (243 SE2d 675) (1978).

Here, the investigating police officer testified that they could not identify the suspect, and the trial court properly submitted the limitation issue to the jury. Although McKeehan argued that the victim knew him and that they had a consensual sexual relationship, the jury believed otherwise, as was their privilege. We find no error.

---

[1] See OCGA § 17-3-1 (b).

3. McKeehan asserts that the trial court erred in denying his motion to dismiss, in which he argued that his Sixth Amendment right to a speedy trial was violated because of the lengthy delay between the time the crime was committed and the indictment and that the inherent prejudice of such delay violated his constitutional right to a speedy trial. The record does not include a copy of the order denying the motion; however, at the motion for new trial hearing, McKeehan stated that "prior to trial the Court considered that Motion to Dismiss, and the ground for it was that he had in fact been denied his fast and speedy trial right. . . . The court heard that matter. It went ahead and found that that issue did not have merit prior to trial." However, given the absence of the evidence presented to the trial court at the hearing on the motion, it is impossible for this court to effectively review the trial court's ruling regarding this argument.

> In order for the appellate court to determine whether the judgment appealed from was erroneous, it is the duty of the appellant to include in the record those items which will enable the appellate court to perform an objective review of the evidence and proceedings. It is appellant's obligation to provide the record substantiating his claim, and in its absence, we must affirm as to that issue.

(Citations and punctuation omitted.) *Thompson v. State*, 269 Ga. App. 77 (603 SE2d 684) (2004).

Moreover, given that McKeehan's argument is essentially that he was, in fact, known to the victim, and that issue was for the jury to decide, we cannot say that the trial court erred in denying the motion to dismiss.

4. Likewise, the record does not include the trial court's hearing on McKeehan's plea in abatement. McKeehan's contention that the trial court erred in denying his plea in abatement because the indictment did not contain the language necessary to toll the statute of limitation is also meritless. He argues that the indictments do not "set forth complete counts because Counts One through Seven failed to contain the tolling language required by statute in order for that offense to be a properly pled crime in the indictment." He further maintains that placing the tolling language for all seven counts of the indictment into a separate count led to confusion and prejudice. Apparently, the trial court held a hearing on this issue prior to trial and ruled against McKeehan. Neither the proceeding nor ruling, however, is before this court, so, as pointed out above, it is impossible for this court to effectively review the trial court's ruling. Nevertheless, we discern no error.

Count 8 of the indictment stated that

at all times material to this count of the indictment, as well as to each of the other seven (7) counts of this indictment, the crimes alleged do not fall outside the period in which a prosecution against this defendant must be commenced because the defendant named herein was unknown until and after January 2, 2002. Further, this allegation as set out herein is specifically incorporated in each and every other count of this indictment which includes counts one (1) through and including seven (7).

The State may rely on an exception to the statute of limitation only if it alleges the exception in the indictment. *Moss v. State*, supra, 220 Ga. App. at 150. As noted above, the exception must be alleged and proved. Id. However, "[a]lthough each count must be complete within itself and contain every allegation essential to constitute the crime, this rule applies to the offense rather than the form. Therefore, one count may incorporate by reference portions of another, and the indictment is read as a whole." (Citations omitted.) *Staples v. State*, 199 Ga. App. 551, 552, n. 1 (405 SE2d 551) (1991).

Accordingly, since the exception essentially operated as a separate allegation, we discern no error in the indictment setting out the statute of limitation language separately and incorporating by reference the other counts.

5. In his last enumeration of error, McKeehan argues the trial court erred by sentencing him as a recidivist. He contends that the trial court did not exercise its discretion in its sentence of life plus 20 years. The State served McKeehan with notice that certified copies of his six prior felony convictions would be used against him in sentencing, as required by OCGA § 17-10-2 (a). Rape and kidnapping with bodily injury, OCGA §§ 16-6-1 (b) and 16-5-40 (b), are subject to the sentencing and punishment provisions of OCGA §§ 17-10-6.1 and 17-10-7. Therefore, once the State introduced evidence of McKeehan's prior convictions, the trial court was required to sentence him pursuant to OCGA § 17-10-7. OCGA § 17-10-7 (a) provides that,

> any person convicted of a felony offense in this state or having been convicted under the laws of any other state . . . of a crime which if committed within this state would be a felony . . . , who shall afterwards commit a felony punishable by confinement in a penal institution, *shall be sentenced to undergo the longest period of time prescribed for the punishment of the subsequent offense of which he . . . stands convicted,* provided that, unless otherwise provided by law, the trial judge may, in his or her discretion, probate or suspend the maximum sentence prescribed for the offense.

(Emphasis supplied.) Under OCGA § 17-10-7 (c) a defendant must "upon conviction for such fourth offense or for subsequent offenses, serve the maximum time provided in the sentence of the judge based upon such conviction and shall not be eligible for parole until the maximum sentence has been served."

Thus, given McKeehan's prior convictions, the trial court lacked discretion to sentence him to anything other than a life sentence without possibility of parole. *State v. Jones*, 253 Ga. App. 630, 632 (560 SE2d 112) (2002). See also *Johnson v. State*, 259 Ga. App. 452, 456 (3) (b) (576 SE2d 911) (2003).

*Judgment affirmed. Ruffin, C. J., and Johnson, P. J., concur.*

DECIDED JUNE 23, 2005.

*William R. Thompson, Jr.*, for appellant.
*T. Joseph Campbell, District Attorney*, for appellee.